STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
FRED U. DRAKE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 1963—Decided June 13, 1963.

Before Judges Goldmann, Freund and Foley.

*Mr. Mario H. Volpe* argued the cause for appellant.

*Mr. Edward J. Phelan,* Assistant Prosecutor, argued the cause for respondent (*Mr. Stanley E. Rutkowski,* Mercer County Prosecutor, attorney; *Mr. Thomas F. Rhodes, Jr.,* Legal Assistant, State of New Jersey, Division of Employment Security).

The opinion of the court was delivered by

Freund, J. A. D. Defendant was granted leave to appeal from a County Court order denying his motion to dismiss four indictments returned against him by the Mercer County grand jury. *R. R.* 3:5–5(b)(6).

The indictments charge defendant with the violation of *N. J. S.* 2A:111–1, which reads as follows:

"Obtaining money, property, etc., by false pretense

Any person who, knowingly or designedly, with intent to cheat or defraud any other person, obtains any money, property, security, gain, benefit, advantage or other thing of value by means of false promises, statements, representations, tokens, writings or pretenses, is guilty of a misdemeanor."

In existence at the time of the alleged offenses contained in the indictments was *N. J. S. A.* 43:21–16(a) (*L.* 1952, *c.* 187, *p.* 661 as amended), which in pertinent part is as follows:

"Penalties; investigating staff

(a) Whoever makes a false statement or representation knowing it to be false or knowingly fails to disclose a material fact, to obtain or increase any benefit or other payment under this chapter (R. S. 43:21–1 et seq.), or under an employment security law of any other State or of the Federal Government, either for himself or for any other person, shall be liable to a fine of $20.00 for each offense, to be recovered in an action at law in the name of the Division of Employment Security of the Department of Labor and Industry of the State of New Jersey or as provided in subsection (e) of section 43:21–14, said fine when recovered to be paid to the unemployment compensation auxiliary fund for the use of said fund; and each such false statement or representation or failure to disclose a material fact shall constitute a separate offense. Any penalties imposed by this subsection shall be in addition to those otherwise prescribed in this chapter (R. S. 43:21–1 et seq.)."

In summary, the indictments allege that defendant, from 1958 through 1960, knowingly and with intent to cheat and defraud the State of New Jersey, obtained negotiable checks from it through the Division of Employment Security, by false statements, representations, writings and pretenses on various occasions and received in the aggregate the sum of $1,295, contrary to the provisions of *N. J. S.* 2A:111–1.

To obtain these benefits defendant fraudulently stated that he was unemployed and was not receiving any wages. In fact, Drake had been an employee of Schanck and Field, grain and straw processors, for 25 years. He also held the position of Clerk of Washington Township since 1933, and was a local zoning officer and building inspector. He received a salary from each position. When the indictments were returned by the grand jury on June 27, 1961, Drake was suspended from his duties as an employee of the local township.

Reduced to its essentials, *N. J. S.* 2A:111–1 provides that a person who fraudulently obtains money or property by means of false representations is guilty of a misdemeanor. *N. J. S. A.* 43:21–16(a) imposes a fine upon an individual who makes false statements in connection with obtaining unemployment benefits. The sole question on this appeal is whether the State is precluded from prosecuting defendant under indictments alleging a violation of *N. J. S.* 2A:111–1 upon facts which would also constitute a violation of *N. J. S. A.* 43:21–16(a). Defendant argues that *N. J. S. A.* 43:21–16(a) is a penal statute and should be strictly construed against the State, and where a conflict exists between a general statute and a later more specific statute, the latter prevails. Defendant therefore maintains that since *N. J. S. A.* 43:21–16(a) was enacted 38 years after *N. J. S.* 2A:111–1 and pertains to a specific form of fraud, he may be punished only pursuant to *N. J. S. A.* 43:21–16(a).

We note preliminarily that *N. J. S. A.* 43:21–16(a) is primarily civil in nature. Although employing the terms "fine" and "offense" which have a criminal connotation (see *Sawran v. Lennon,* 19 *N. J.* 606, 612–613 (1955)), the clear intent of this statute is to provide a civil remedy. Defendant's responsibility under the statute is described in terms of liability. The fine imposed for making a false statement is "to be recovered in an action at law in the name of the Division of Employment Security." The money collected is to be paid specifically to the Unemployment Compensation Auxiliary Fund. The term "penalty" is also used in *N. J. S. A.* 43:21–16(a) to describe the remedy; and in *Sawran, supra,* the court expressly stated that an action for a penalty is neither criminal nor *quasi*-criminal in nature, but civil.

Assuming that *N. J. S. A.* 43:21–16(a) is essentially penal in nature, we cannot agree with defendant when he argues that it repeals *N. J. S.* 2A:111–1. Implied repealers are not favored in the law. The intent of the Legislature to repeal a prior enactment will not arise by implication unless the subsequent statute is plainly repugnant to the former and

is designed to be a complete substitute for the former. *Swede v. Clifton*, 22 *N. J.* 303, 317 (1956) ; *Goff v. Hunt*, 6 *N. J.* 600, 606 (1951). As stated in 2 *Sutherland, Statutory Construction* (*3d ed.* 1943), § 5201, *p.* 531 :

"Prior statutes relating to the same subject matter are to be compared with the new provision; and if possible by reasonable contruction, both are to be so construed that effect is given to every provision of each."

Furthermore, if the Legislature, when it enacted *N. J. S. A.* 43 :21–16 (a), had intended that it was to repeal the provisions of *N. J. S.* 2A :111–1, it could have incorporated appropriate language of express repealer.

■ The question of whether the same offense may constitute a violation of two separate statutes has been resolved by our courts in favor of allowing the State to proceed under either statute, in the absence of a clear contrary legislative intent. For example, the court in *State v. Reed*, 34 *N. J.* 554 (1961), upheld a conviction for the unlawful possession of narcotics, *R. S.* 24 :18–1 *et seq.*, despite the fact that defendant might also have been prosecuted pursuant to the more recently enacted *N. J. S.* 2A :170–8 for the unauthorized use of narcotics. See *State v. Labato*, 7 *N. J.* 137, 151 (1951) (gambling) ; *State v. Adams*, 77 *N. J. Super.* 232, 234 (*Cty. Ct.* 1962) (prostitution).

The determination in *State v. Fary*, 16 *N. J.* 317 (1954), is particularly apposite to the present appeal. In that case, defendant was indicted under *N. J. S.* 2A :119–3, which made the obtaining of negotiable instruments by false pretense a high misdemeanor. Fary argued that this section of the penal laws had been repealed by a subsequently enacted section of the Disorderly Persons Act, *N. J. S.* 2A :170–43, which prohibited obtaining money or property from the State by false statements. Fary's alleged offense would have constituted a violation of either of these statutes. In upholding the right of the State to prosecute the defendant under the earlier criminal statute, where the punishment was more severe, the late Chief Justice Vanderbilt commented that :

"By leaving both statutes on the books in the 1951 revision of *Title* 2 the Legislature clearly intended that the two offenses should remain, one as an indictable crime and the other as a disorderly persons offense. N. J. S. 2A:170–43 contains no express repealer of N. J. S. 2A:119–3, and clearly is not so repugnant to the latter statute as to be an implied repealer of it * * *. The fact that there is an area in which the two statutes overlap and prohibit the same act, as in this case, does not mean that the defendant can only be prosecuted under the statute providing for the lesser penalty * * *." *Ibid.*, 16 *N. J.*, at *p.* 323.

Similarly, in the present case there is no express repealer nor are the two statutes repugnant or contradictory.

█ It is significant that defendant in the present case was indicted under *N. J. S.* 2A:111–1, which penalizes the *obtaining of money* through false pretenses. The subsequently enacted *N. J. S. A.* 43:21–16(a), which defendant argues has nullified the pre-existing criminal provision, only concerns the *making of false statements* for the purpose of obtaining or increasing unemployment benefits. Thus, *N. J. S. A.* 43:21–16(a) only penalizes the making of fraudulent statements, and it is not necessary that one prosecuted under its provisions have actually obtained the benefit. The statutes provide for two distinct offenses. The fact that an accused could be prosecuted for either offense does not alone affect their constitutional validity. In a similar situation the Supreme Court has aptly commented that "the decision to proceed under either or both of the statutes is traditionally the State's." *State v. Reed, supra,* 34 *N. J.,* at *pp.* 572–3.

The parties have cited several authorities from other jurisdictions dealing with the question of whether a prosecution under a more stringent criminal provision is precluded by the penalty provision of the relevant Unemployment Compensation Act. Although they concern different statutes than those involved in the present case, a brief examination of these authorities is instructive.

The decision in *Commonwealth v. Wright,* 69 *Pa. Dist. & Co. R.* 418 (*O. & T.* 1949), upheld an indictment for violation of the penal code for obtaining property by false pretenses.

Defendant contended that, if he was to be prosecuted, it should have been under the Unemployment Compensation Law. The court noted that the Unemployment Compensation Act could only penalize the making of the false statement and not the fraudulent obtaining of property. The trial judge denied a motion to quash an indictment for a violation of the penal code.

In *People v. Licausi*, 23 *Misc. 2d* 75, 200 *N. Y. S. 2d* 582 (*Cty Ct.* 1960), defendant was indicted for the felony of fraudulently presenting claims to public officers for payment while representing that he was unemployed. Defendant argued that he should be entitled to a misdemeanor charge under the New York Unemployment Act. This contention was summarily rejected. The court commented that "the State may proceed under a general statute even though a more specific one is available." (200 *N. Y. S. 2d;* at *p.* 585.)

▆ The only authority cited to us, holding that a penalty provided in an unemployment statute precludes prosecution under the terms of a more general criminal law, is *People v. Haydon,* 106 *Cal. App. 2d* 105, 234 *P. 2d* 720 (*Cal. D. Ct. App.* 1951). There, defendant was convicted for willfully making a false claim to a state board with intent to defraud. In reversing this conviction the court was guided by a special statutory provision that "when a general and [a] particular provision are inconsistent, the latter is paramount to the former." *Cal. Civ. Proc. Code,* § 1859, quoted in *People v. Haydon, supra,* 234 *P. 2d,* at *p.* 722. The unemployment penalty was held to govern, since it provided for the same crime—the presentation of a fraudulent claim—but made reference to a particular state agency. We find *Haydon* to be factually distinguishable from the present case. As noted, the statute under which defendant was indicted concerned the fraudulent obtaining of money, while the Unemployment Compensation Act provision only related to the making of a false statement.

Affirmed.