Burke, J.
Bene C'artayas parked and locked his white, four-door, 1960 Oldsmobile in front of his home late in the afternoon on September 12, 1965. Before retiring at midnight, he noticed that the car was still- there. Begrettably, the automobile was gone the following morning. The theft was immediately reported to the police.
On September 15, Patrolmen Ferrante and Dowd were assigned to a radio patrol in the Hunts Point section of The Bronx. Officer Ferrante, the driver of the car, had been working in that neighborhood for two years. His partner was also familiar with the area. As they approached the intersection of Hunts Point and Bandall Avenues — an industrial area replete with automobile junk yards — they observed a white, four-door, 1960 Oldsmobile for. approximately 30 seconds as it approached, made a left turn in front of them and proceeded in that direction. During this sequence, they recognized the driver of the car, defendant Charles Moro. Moro was a local resident known to the officers as a “ street mechanic.”[1] Patrol *499 man Ferrante, acting intuitively, made a notation of the car’s license plate number—L 5692.
The following day, the officers recognized this white, four-door, 1960 Oldsmobile, parked approximately 200 feet from the same intersection of Hunts Point and Randall Avenues. ■ The license plate number was identical, but the car had been altered externally, the front bumper having been removed. In addition, there was evidence that the car had been partly dismantled, as the radiator had been removed, the tires were threadbare and the battery was extremely old. The officers saw defendant Moro at the intersection of Hunts Point and Randall Avenues, approached him and accompanied him to the parked automobile where he was asked to produce both his driver’s license and the registration papers of the Oldsmobile. Moro was unable to supply either of the requested documents. One officer then contacted the Communications Department and was informed that a car bearing license plate number L 5692 had been stolen. Defendant was arrested and a subsequent search disclosed that he possessed a key which fit both the door and the ignition of the Oldsmobile. Defendant was taken to the local precinct where it was discovered that the stolen license plate did not belong to an Oldsmobile. However, upon tracing the automobile’s serial number, the police were informed that the car had been stolen from Rene Cartayas. When the car arrived at the precinct, it was inoperable. Cartayas, notified that the car had been recovered, claimed it and towed it away.
Of the five counts contained in the indictment against Moro, only three were submitted to the jury: grand larceny in the first degree, resulting from defendant’s taking of the Oldsmobile; criminally concealing and withholding stolen property under section 1308 of the old Penal Law; and unlawfully possessing burglar’s tools. The jury found Moro guilty of concealing and withholding the stolen property and of possessing burglar’s tools. He was acquitted on the grand larceny count.
Appellant advances two legal points in this appeal. First, we are told that under the decisional law of this State it was improper for the jury to convict the defendant of the crime of receiving stolen property. Judge Cabdozo’s opinion in People v. Galbo (218 N. Y. 283) provides an excellent point of departure for a discussion of this contention. In Galbo, Judge Cabdozo *500 stated: “It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal. That rule has most frequently been applied in cases of burglary (Knickerbocker v. People, 43 N. Y. 177) and larceny (Stover v. People, 57 N. Y. 315) and receiving stolen goods (Goldstein v. People, 82 N. Y. 213) ” (218 N, Y., p. 290). At a later point in that opinion, Judge Cakdozo declared: ‘1 Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? ” (218 N. Y., p. 290; emphasis supplied).
Since Galbo, the decisions of this court have uniformly sustained this proposition that the recent and exclusive possession of the fruits of a crime, if unexplained or falsely explained, justify the inference that the possessor is a criminal. Thus, in People v. Daghita, it was said that ‘ ‘ A defendant may, of course, be indicted for both the crime of larceny and the crime of concealing and withholding and it is for the jury to determine whether he is guilty as a thief of larceny or as a non-thief of concealing and withholding.” (301 N. Y. 223, 228.) However, he may not be convicted of both crimes. (People v. Daghita, supra.) The evidence adduced at trial, when examined by the jury, is determinative of whether the possessor is the thief or merely a possessor. (People v. Everett, 10 N Y 2d 500; see, also, People v. Nazar, 305 N. Y. 751.)
In this case, the evidence adduced established that some one other than the defendant probably stole the automobile. The testimony showed that defendant possessed mechanical skill. Additionally, there was proof that the car had been rendered inoperable four days after it had been stolen, but only one day after defendant had been seen driving it by the arresting officers. Moreover, the alterations performed on the vehicle were not of such a nature that an experienced mechanic could not have performed them within a day. In such a situation, it is indeed reasonable to presume that, if a person stole a vehicle for the purpose of appropriating as many functioning parts as possible, such work would be done immediately. It was, therefore, permissible, under these circumstances, for the jury to find the defendant guilty of the crime of receiving stolen property. *501 It is also noteworthy that the problem posed by this appeal has, in large measure, been rendered academic by the Revised Penal Law. Section 165.60 (subd. 2) specifically declares that, in a prosecution for criminal possession of stolen property, it is no defense that the defendant stole or participated in the larceny. The necessary limitation that the person may not however be convicted for both crimes is also included. (Penal Law, § 165.60.)
Section 393 of the Code of Criminal Procedure, which provides the basis of defendant’s second argument, recites that the neglect or refusal of a defendant to testify in his own behalf does not create any presumption against him. (Code Grim. Pro., § 393.) It is argued that the Judge prejudiced this defendant and violated the provision of the above statute when he remarked that the defendant had unexplained possession of the stolen car. Reference is also made to recent Supreme Court decisions re-emphasizing the rule that no comment may be made with regard to a defendant’s failure to testify. (See Malloy v. Hogan, 378 U. S. 1; Griffin v. California, 380 U. S. 609.)
As we noted earlier, the law of this State clearly provides that the unexplained possession of the fruits of a crime creates an inference that the possessor is a criminal. Appellant now contends that the inference is overcome only when he testifies and explains such possession. Were this so, his argument would indeed have merit.
The inference to be drawn against the defendant arises from the proven fact of his unexplained possession of the fruits of the crime. The inference continues only until some evidence is presented to explain this possession. It may certainly be overcome without the defendant’s testimony and is not sustainable merely because the defendant has refused to take the stand. The existence of the inference in no way' encroaches upon the well-established right of the defendant to refrain from testifying in his own behalf.
The facts of this case illustrate this point. The Trial Judge showed great care when he referred to the unexplained possession of the automobile by the defendant. He made his statement when summarizing the facts and while recalling a portion of the testimqny of one of the arresting police officers. Moreover, he twice informed the jury, during the trial, that section 393 of the Code of Criminal Procedure precluded them *502 from drawing any inferences against the defendant because of his failure to testify. Under such circumstances, it is apparent that a defendant’s rights are unimpaired by the fact that an inference may arise from his unexplained possession of the fruits of a crime. (See Wangrow v. United States, 399 F. 2d 106, 118, cert. den. 393 U. S. 933.)
For these reasons, the judgment appealed from should be affirmed.
Chief Judge Ftjld and Judges Scileppi, Bebgan, Keating, Bbeitel and Jasen concur.
Judgment affirmed.

. “ ¡Street mechanic ” is a slang expression, meaning one who may be privately employed to do piecemeal automotive work.